**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No.  10-28882 |
| SK HAND TOOL CORPORATION, | ) | |
|     Debtor. | ) | |
| | ) | |
| IN RE TRIAT INDUSTRIES, INC., | ) | Case no. 10-28886 |
|     Debtor. | ) | Chapter 11 |
| | ) | |
| IN RE MCC BUSINESS, INC. | ) | Case no. 10-28889 |
|     Debtor. | ) | Chapter 11 |
| | ) | Hon. Eugene R. Wedoff |
| | ) | Hearing:  Thurs., July 1, 2010 at 9:30 a.m. |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **Thursday, July 1, 2010 at 9:30 a.m.,** or as soon thereafter as may be possible, we shall appear before the **Honorable Judge Eugene R. Wedoff** or any other Judge sitting in his stead, in **Courtroom 744** of the Dirksen Federal Building, 219 South Dearborn, in Chicago, Illinois, and shall then and there present the attached **Motion of the Debtor for (I) an Order (a) Establishing Bidding Procedures for the Sale of Certain Assets; (b) Setting Final Sale Hearing Date and (C) Approving Form of Notices; and (II) An Order (a) Authorizing Sale of Certain Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases,** and shall move the court for the entry of an order in accordance therewith.

                                                **SK HAND TOOL CORPORATION, TRIAT
                                                INDUSTRIES, INC., and MCC BUSINESS, INC.**


                                      By:    /s/ Colleen E. McManus
                                                One of their proposed attorneys

Kurt M. Carlson ARDC No. 06236568
Colleen E. McManus ARDC No. 06243473
MUCH SHELIST DENENBERG
      AMENT & RUBENSTEIN, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois  60606
Telephone:  312.521.2000
Email: cmcmanus@muchshelist.com

**CERTIFICATE OF SERVICE**

Colleen E. McManus, an attorney, affirms that on June 29, 2010, she served a copy of the attached Motion for Entry of Order Directing Joint Administration of Related Cases upon those individuals listed on the attached service list either via overnight delivery, messenger and/or by depositing same in the U.S. Mail from 191 N. Wacker Drive, Suite 1800, Chicago, Illinois.


       /s/ Colleen E. McManus

## SK HAND TOOL CORPORATION SERVICE LIST

Office of the U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, IL 60604
**Via Messenger**

SK Hand Tool Corporation
3535 W. 47th Street
Chicago, IL 60632

Mark Robertson
Blackman Kallick
10 S. Riverside Plaza, 9th Floor
Chicago, IL 60606
**Via Messenger**

A.J. Manufacturing Co., Inc.
P.O. Box 92170
Elk Grove Village, IL 60009

Blue Cross Blue Shield of Illinois
P.O. Box 1186
Chicago, IL 60690

Bost Garnache Industries
B.P. 47-83 Pasteur Avenue
39602 Arbois Cedex
France

Central States SE & SW Pension Fund
c/o Anthony E. Napoli
9377 W. Higgins Road, 10th Floor
Rosemont, IL 60018
**Via Overnight Delivery**

Consolidated Sales Group, LLC
P.O. Box 1116
Elk Grove, CA 95759

Cook County Treasurer
P.O. Box 4488
Carol Stream, IL 60197

Facom - Morangis
6 rue Gusatve Eiffel
91423 Morangis Cedex
France

Kaiser Cray, Ltd.
Certified Public Accountants
1901 S. Meyers Road, Suite 230
Villa Park, IL 60181
**Via Overnight Delivery**

Kapon Enterprise Ltd.
No. 367 Pei Yang Road
Fengyuan City, Taiwan

Kingyear Co., Ltd.
No. 5 Alley 1
Fu Hsin Road
Taiwan

McCourt Marketing Group
1314 Centerview Circle
Akron, OH 44321
**Via Overnight Delivery**

Ningbo United Group, Ltd.
No. 31 Guangji Street
Ningbo, Puerto Rico

S&L Marketing
915 Clifton Avenue
Clifton, NJ 07013
**Via Overnight Delivery**

SPX Service Solutions
c/o Linda M. Watson
255 S. Old Woodward, 3rd Floor
Birmingham, MI 48009
**Via Overnight Delivery**

US Dept. of Labor-Solicitor Office
c/o Elizabeth R. Ashley
881 Fed. Off. Bldg., 1240 E. 9th St
Cleveland, OH 44199
**Via Overnight Delivery**

VO Investment, LLC
415 E. North Water Street
Chicago, IL 60611
**Via Messenger**

Waterloo Industries, Inc.
75 Remittace Drive, Suite 1014
Chicago, IL 60675
**Via Overnight Delivery**

West 55th Street Investors, LLC
Niscolson Porter & List, Inc.
1300 W. Higgins Road
Park Ridge, IL 60068
**Via Overnight Delivery**

Wright Tool Co.
P.O. Box 951798
Cleveland, OH 44193

Rosanne Thomas Matzat
Hahn & Hessen, LLP
488 Madison Avenue
New York, NY 10022
**Via Overnight Delivery**

Allen H. Guon
Shaw Gussis Fishman Glantz, et.al.
321 N. Clark Street, Suite 800
Chicago, IL 60654
**Via Messenger**

Michael A. Maricco
Courtney L. Hansen
Pension Benefit Guaranty Corporation
1200 K Street, NW
Washington, DC 20005-4026
**Via Overnight Delivery**

Mayer Silber
Internal Revenue Service
200 W. Adams Street, Suite 2300
Chicago, IL 60606
**Via Messenger**

Nathan Coco
McDermott Will & Emery
227 W. Monroe Street
Chicago, IL 60606
**Via Messenger**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 10-28882 |
| SK HAND TOOL CORPORATION, | ) | Hon. Eugene R. Wedoff |
| *et al.*,[1] | ) | (Joint admin pending) |
| Debtors. | ) | |
| | ) | Hearing: Thurs., July 1, 2010 at 9:30 a.m. |

**MOTION OF THE DEBTORS FOR (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF CERTAIN ASSETS; (B) SETTING FINAL SALE HEARING DATE AND (C) APPROVING FORM OF NOTICES; AND (II) AN ORDER (A) AUTHORIZING SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES</u>**

The above-captioned debtor and debtor-in-possession (the "Debtor") filed this motion pursuant to Bankruptcy Code Sections 105, 363 and 365, Fed. R. Bankr. P. 2002, 6004 and 6006 for entry of (i) an order, substantially in the form attached hereto (a) establishing bidding procedures for the sale of certain assets; (b) setting a final sale hearing date; and (c) approving the form of notices thereof; and (ii) an order, substantially in the form attached hereto (a) authorizing the sale of certain assets free and clear of liens, claims, interests and encumbrances and (b) the assumption and assignment of certain executory contracts and unexpired leases.

<u>Background Facts</u>

1.      On June 29, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      The Debtor was founded in Chicago in 1921 as a manufacturer of hand tools and power tools, which it distributes through independent dealers. It has manufacturing facilities in

---

[1] The Debtors consist of SK Hand Tool Corporation (FEIN 36-3255336); MCC Business, Inc. (FEIN 20-4481772); and Triat Industries, Inc. (FEIN 13-3514526).

Chicago and Defiance, Ohio, although Defiance is currently not operating.  In April 2005, the Debtor's new management team created a new company, MCC Business, Inc., which purchased the Debtor's parent company, Strafor Facon, Inc. n/k/a Triat Industries, Inc., and its subsidiary, *i.e.*, the Debtor.

3. The Debtor has experienced a significant decline in earnings caused by several economic conditions, for example, loss of certain top customers (including government contracts); increasing labor costs; the impact of the recession on industries upon which the Debtor depends for sales, *e.g.*, automotives; and the cost of an under-utilized, leased distribution facility in McCook, Illinois.

4. At the time of this bankruptcy filing, the Debtor owed its senior secured lender, Webster Business Credit ("Webster"), approximately $9 million and owed the Pension Benefit Guaranty Corporation approximately $2.5 million pursuant to pension fund contributions it failed to make, which failure resulted in a lien in favor of PBGC.

5. The Debtor seeks to preserve the value of its assets with the goal of conducting an orderly liquidation of its assets in Chapter 11.

<u>Exigent Circumstances and Marketing</u>

6. As the Debtor's liquidity position has worsened, the Debtor has been left with no option available other than to pursue a transaction that will allow for the sale of its business in order to avoid what is likely to be a further deterioration of its business.

7. As a result, the Debtor spent the last several months, with its investment banker, General Capital Partners, running a comprehensive marketing process for the sale of its business. The Debtor received more than one letter of intent, but after intense efforts by the Debtor and GCP to increase the consideration to be paid, and to attempt to sell all of the Debtor's assets

together, the Debtor finally entered into an Asset Purchase Agreement (the "APA") with Ideal Industries, Inc. (the "Buyer"). A copy of the APA is attached as <u>Exhibit A</u>.

8. The Debtor submits that, given its current liquidity situation and continuing deterioration of its business, an expeditious sale of the Acquired Assets is in the best interests of this estate. In fact, the Buyer's potential purchase price is likely to decrease in the event the proposed sale is not timely consummated; the APA provides for an order approving Bidding Procedures (set forth below and attached) to be entered no later than July 6, 2010. Furthermore, while Webster is willing to support the Debtor's liquidity pending a sale, Webster is unwilling to extend such support past July 31, 2010. Accordingly, the Debtor's proposed DIP financing is set to expire on July 31, 2010.

<u>Proposed Sale</u>

9. The salient terms of the APA are:

**Purchase Price**: $3,250,000 for the Acquired Assets (defined in the APA). Ideal has tendered a good faith deposit in the amount of $162,500, which the Debtor will hold in an escrow account.

**Acquired Assets**: Ideal seeks to purchase certain of the Debtor's assets listed on Schedule 1.1 to the APA, which schedule remains in process but will consist of machinery and equipment, inventory, intellectual property, certain executory contracts, supplies, motor vehicles, computer hardware and software, licenses and permits and other personal property (collectively, "Acquired Assets").

**Assumed Liabilities**: The Buyer will assume all obligations arising after the Closing Date under the Acquired Contracts and all cure costs to be paid pursuant to Section 365 in connection with assumption and assignment of the Acquired Contracts.

3

Document Page 8 of 15

**Sale Free and Clear**: The Acquired Assets shall be purchased free and clear of all liens, claims, interests and encumbrances.

Proposed Bidding Procedures

10. The Debtor proposes the following Bidding Procedures as being best designed to maximize the value of the Acquired Assets.

    a. **Assets to be Sold**. The Debtor is offering the Acquired Assets for sale. The Debtor shall retain title to assets that are not subject to a Successful Bid (defined below) and approved for sale at the Sale Hearing.

    b. **As Is, Where Is**. The sale of the Acquired Assets shall be on an "as is, where is" basis without representations or warranties of any kind except to the extent set forth in the APA. The Acquired Assets shall be sold free and clear of any liens, claims, interests and encumbrances pursuant to Section 363, with all liens, claims, interests and encumbrances to attach to the proceeds of the sale.

    c. **Qualifying Bid**. The Debtor requires, as a precondition to participation in the Auction (defined below):

        (i) the submission of a competing bid for some or all of the Acquired Assets no later than 5:00 p.m. Central Standard Time at least three (3) business days prior to the Auction (a "**Qualifying Bid**");

        (ii) each Qualifying Bid must be submitted in writing to counsel for the Debtor, c/o Colleen E. McManus, Much Shelist, 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606 via overnight mail, facsimile (312-521-2595), or electronic mail (cmcmanus@muchshelist.com). Counsel for the Debtor shall immediately distribute copies of all Qualifying Bids to (1) counsel for the Buyer, c/o Eric Orsic and Nathan Coco of McDermott Will and Emery; (2) counsel for Webster, c/o Rosanne Matzat of Hahn & Hessen and Robert Glantz of Shaw Gussis; (3) Sean Donlin of General Capital Partners; and (4) counsel for the Official Committee Of Unsecured Creditors, if one is appointed, c/o _____.

        (iii) each Qualifying Bid shall be accompanied by:

        (1) an earnest money deposit by wire transfer, certified or cashier's check, in the amount of $162,500;

        (2) an executed confidentiality agreement;

        (3) an executed asset purchase agreement substantially in the form of the APA along with a red-line marked against the APA; and

(4) written evidence of a commitment for financing or other evidence of the party's ability to consummate the transaction and payment of the purchase price in cash at the Closing.

Each Qualifying Bid shall be irrevocable until the earlier of (i) the closing sale of the Acquired Assets, or (ii) the withdrawal of the Acquired Assets for sale by the Debtor.

   d. **Bid Protection**.  The Debtor requires that (x) any initial bid at the Auction be higher and better than the offer of Buyer with a cash payment at closing that is not less than $3,400,000; and (y) any subsequent bid at the Auction (a "**Competing Bid**") be at least $25,000 greater than the preceding bid.

   e. **Break-Up Fee**.  The Buyer shall be entitled to a break-up fee in the amount of $125,000 plus Buyer's reasonable out of pocket legal and other fees and expenses not to exceed an additional $25,000 (together, the "**Break-Up Fee**") in the event that either (x) the Bankruptcy Court fails to approve a sale to Buyer as provided herein and instead approves a sale of some or all of the Acquired Assets to any entity that has submitted a Competing Bid at the Auction and such sale closes, or (y) Webster credit bids with respect to, or forecloses on, some or all of the Acquired Assets.

The Break-Up Fee shall be entitled to administrative priority under Section 364(c)(1) of the Bankruptcy Code and shall constitute a surcharge under Section 506(c) of the Bankruptcy Code on any interest of Seller in the Acquired Assets which is subject to any lien, security interest or other encumbrance.

If Buyer elects to participate in bidding at the Auction, Buyer may credit the Break-Up Fee towards its bid.

   f. **Auction**.  If the Debtor receives a Qualifying Bid, the Debtor shall conduct an auction (the "Auction") at the offices of Much Shelist, 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606 on the date that is two (2) business days prior to the Sale Hearing.  The Debtor shall notify all Qualified Bidders of the Auction.  The Debtor may adopt rules for the Auction that, in its business judgment, will promote the goals of the bidding process and that are not inconsistent with the Bidding Procedures, the APA, the Bankruptcy Code or any order of this Court.  Following the Auction, the Debtor shall review the Qualifying Bids and, in consultation with Webster, identify the highest and best bid as the "Successful Bid."  The Debtor shall present the Successful Bid to the Court at the Sale Hearing.

   g. **Return of Deposits**.  The earnest money deposit of a Qualifying Bid shall be returned within three (3) business days of the earlier of (i) the closing of the sale and (ii) 30 days after the Sale Hearing.  In the event that the holder of the Successful Bid defaults in the performance of its obligation to purchase the Acquired Assets pursuant to the Successful Bid, that person's earnest money deposit shall be forfeited and shall be immediately transferred to the Debtor.  Notwithstanding the foregoing, such forfeiture shall not be in full satisfaction of any damages caused to any person by the default as described herein.

5

Notice Procedures

11. The Debtor proposes to serve a notice, in the form attached hereto as <u>Exhibit B</u>, within three (3) business days following entry of an order approving the Bidding Procedures (draft Bidding Procedures Order attached hereto as <u>Exhibit C</u>), of:

* the Order approving the Bidding Procedures,

* the Bidding Procedures,

* the time and place of the Auction,

* the deadline of July 20, 2010 for filing objections to the proposed sale,

* the Sale Hearing of July 26, 2010,

12. The notice shall be served upon: (a) the U.S. Trustee; (b) the Debtor's 20 largest creditors; (c) counsel to Webster Business Credit; (d) counsel to the PBGC; (e) counsel to the creditors' committee, if one is appointed; (f) counsel to the Buyer; (g) the Internal Revenue Service; (h) all parties known to have expressed an interest in buying the Acquired Assets; (i) all parties asserting a lien in the Acquired Assets; (j) all non-Debtor parties to the executory contracts and unexpired leases; and (k) all other parties entitled to, or requesting, notice in this case.

Assumption and Assignment Procedures

13. The Buyer proposes acquiring certain executory contracts and unexpired leases of the Debtor (the "Acquired Contracts")[2] which are listed in Schedule 1.1(b) to the APA. Pursuant to the APA, the Buyer will assume and pay all cure amounts under the Acquired Contracts.

14. The APA provides that, on or before the third (3rd) day prior to the Auction, the Buyer may update the Schedule of Acquired Contracts and the Schedule of Excluded Contracts

---

[2] Fed. R. Bankr. P. 6006(e) allows for the assignment of multiple contracts in one motion if all executory contracts or unexpired leases being assigned are to the same assignee, or else upon Court authority. Here, the Buyer or Successful Bidder will be the only assignee of the Acquired Contracts.

6

to the APA to add an executory contract or unexpired lease to either schedule. On or before the third (3rd) day prior to the Sale Hearing, the Buyer may update the Schedule of Acquired Contracts and the Schedule of Excluded Contracts to the APA to remove an executory contract or unexpired lease from either schedule.

15.     Accordingly, the Debtor shall, no more than three (3) business days after entry of the Bidding Procedures Order, serve notice by first-class mail on the non-Debtor parties to the executory contracts and unexpired leases, which notice shall set forth (a) the proposed assignment; (b) the amount, if any, that the Debtor determines is necessary to cure any existing default under the contract or lease; (c) an identification and description of the Buyer and its ability to perform the obligations under the Acquired Contract; (d) a deadline of July 16, 2010 for filing and serving (upon the Debtor's counsel and the Buyer's counsel) a written objection to the proposed assignment of the Acquired Contract (a "Section 365 Objection)"; (e) the Debtor's position that their failure to timely file and serve a Section 365 Objection will deem them to have (i) consented to the proposed cure amount, if any, the Buyer's or Successful Bidder's adequate assurance of future performance, the Sale Order's application to the assignment of their contract with the Debtor and (ii) waived their right to declare a default or termination under their contract with the Debtor; and (f) the cure amount, if still disputed, shall be heard by the Court at the Sale Hearing.

Request to set Sale Hearing

16.     The Debtor intends to present the Successful Bid for approval by the Court on July 26, 2010 (*i.e.*, two (2) business days after Auction).

17.     The Debtor intends to seek entry of the Sale Order (attached as <u>Exhibit D</u>) at the sale hearing.

Legal Authority

**Debtor's Business Judgment:**

18. This Court's power to authorize a sale under 11 U.S.C. § 363(b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case by case approach. *In re Baldwin United Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984). The key consideration is this Court's finding that a good business reason exists for the sale. *In re Schipper*, 933 F.2d 513 (7th Cir. 1991); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Lionel Corporation*, 722 F.2e 1063, 1070-71 (2nd Cir. 1983).

19. The Debtor believes a prompt sale of the Acquired Assets, pursuant to Section 363(b), to the Buyer or a Successful Bidder is the best and most viable option available to the Debtor's estate to maximize value of the Acquired Assets.

20. The Debtor has reason to be concerned that: (a) the value of the Acquired Assets is deteriorating and may deteriorate further if the proposed sale process is delayed, and (b) expenses and risks relating to the maintenance and security of the Acquired Assets. These concerns are shared by Webster.

**Bidding Procedures & Break-Up Fee:**

21. To maximize the probability that the Debtor obtains the greatest return for the Acquired Assets, the Debtor request approval of the Bidding Procedures. The procedures allow for a transparent, flexible process to achieve the highest return. The Debtor reserves the right to modify the Bidding Procedures if necessary, in its business judgment, to maximize value at the Auction provided that such modifications are not inconsistent with the terms of the APA. Maximization of proceeds received by this estate is the dominant goal of the sale, as it should be. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res.,*

*Inc.*), 147 B.R. 650, 659 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (debtor's duty with respect to sales it to obtain highest price or greatest overall benefit for estate).

22. In furtherance of maximizing value received by the estate, bankruptcy courts typically find that use of bid procedures is appropriate. The Debtor submits that, here, the Bidding Procedures establish an appropriate process to identify, select and solicit bids and determine which bid is the highest or best bid.

23. A break-up fee is considered necessary to compensate a stalking horse bidder for its time, effort and expense in seeking to consummate a sale and in driving up the price for the purchased assets. *See e.g.,* I*n re Hupp Indus, Inc*., 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("without such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial's bidder…due diligence").

24. The Break-Up Fee of $125,000 is approximately 3.8% of the Buyer's Purchase Price and, thus, is fair and reasonably calculated to produce the highest and best offers for the Acquired Assets. *See e.g., In re Select Snacks, Inc*., Case No. 07-18769 (Bankr. N.D. Ill., October 23, 2007) (Hollis, J.) (approving break-up fee equal to 3% of purchase price). The Break-Up Fee also includes a reasonably modest expense reimbursement of $25,000 in favor of the Buyer. The Break-Up Fee shall be entitled to an administrative priority under Section 364(c)(1) of the Bankruptcy Code and shall constitute a surcharge under Section 506(c) of the Bankruptcy Code on any interest of the Debtor in the Acquired Assets which is subject to any lien, security interest or other encumbrance.

25. Moreover, the Bidding Procedures require that an initial bid at the Auction have an overbid in the amount of $150,000 above the Buyer's purchase price, with bidding increments

9

of $25,000 thereafter. This mechanism ensures that the Debtor is compensated for foregoing a known, willing purchaser in the Buyer for a new, unknown potential buyer. It also ensures that there is a real increase in proceeds to the estate after deducting the Break-Up Fee (including the expense reimbursement) should the Buyer not be the Successful Bidder.

26.     The initial overbid is fair and reasonable and is supported by applicable case law. *See e.g., In re Colony Hill Assoc.*, 111 F.3d 269 (2d Cir. 1998) (requiring minimum overbid of purchaser's initial offer by at least 8.6%).

**Sale Free and Clear:**

27.     Section 363(f) permits a sale of assets free and clear of liens, claims, interests and encumbrances. A sale free and clear is necessary to effectuate the transaction proposed here. Obviously, if the sale were subject to liens, claims, interests and encumbrances, the purchase price would be substantially lower (Webster alone is owed more than $9 million with a lien on the Acquired Assets).

28.     Accordingly, the Sale Order provides that liens, claims, interests and encumbrances shall attach to the sale proceeds in the same validity and priority that they had prior to the sale. In light of this factor, the Debtor submits that a sale free and clear of liens, claims, interests and encumbrances is appropriate here.

**Assumption and Assignment:**

29.     Section 365 permits assumption and assignment so long as defaults under the particular executory contracts and unexpired leases are cured and adequate assurance of future performance is provided.

30.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given practical construction. *See e.g., EBG*

*Midtown South Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992).

31.     Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property being assigned. *See e.g., In re Bygraph, Inc*., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986).

32.     In sum, the Debtor submits that the relief requested above is in the best interests of this estate and best designed to maximize the value of the Acquired Assets.

33.     The Debtor has served this motion upon (a) the U.S. Trustee; (b) the Debtor's 20 largest creditors; (c) counsel to Webster Business Credit; (d) counsel to the PBGC; and (e) the Internal Revenue Service.

WHEREFORE, for the foregoing reasons, the Debtor prays for the entry of orders:

A.      granting this motion;

B.      entering the Bidding Procedures Order, which approves the Bidding Procedures, the form of the notice of Bidding Procedures and sale transaction; and

C.      awarding such other relief as the Court deems just and proper.

**SK HAND TOOL CORPORATION**

By: /s/ Colleen E. McManus
     One of its proposed attorneys

Kurt M. Carlson ARDC No. 06236568
Colleen E. McManus ARDC No. 06243473
MUCH SHELIST DENENBERG
        AMENT & RUBENSTEIN, P.C.
191 No. Wacker Driver, Suite 1800
Chicago, Illinois 60606
Telephone: 312.521.2000
Email: cmcmanus@muchshelist.com

11